UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ASHLEY ROSS,

                                        Plaintiff,

v.                                                                    1:24-cv-00492 (AMN/PJE)

SAM'S EAST, INCORPORATED d/b/a
SAM'S CLUB #6440,

                                        Defendant.

_____

APPEARANCES:                                          OF COUNSEL:

**ABRAMS FENSTERMAN LLP**                 **JOHN C. LUKE, JR., ESQ.**
3 Dakota Drive – Suite 300
Lake Success, New York 11042
*Attorneys for Plaintiff*

**WIGGIN AND DANA LLP**                      **LAWRENCE D. PEIKES, ESQ.**
Two Stamford Plaza – 281 Tresser Boulevard
Stamford, Connecticut 06901
*Attorneys for Defendant*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On April 9, 2024, Plaintiff Ashley Ross commenced this action against Sam's East, Incorporated ("Sam's East"), Joseph Goodnough, and Bridget Woodall-Fary alleging employment discrimination claims under Title VII and New York State law. Dkt. No. 1. On January 23, 2025, Plaintiff filed an Amended Complaint against Defendant Sam's East. Dkt. No. 29. Presently before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 41 ("Motion"). Plaintiff opposed the Motion on February 27,

2026, *see* Dkt. No. 42, and Defendant replied in further support of the Motion on March 6, 2026. Dkt. No. 44.

For the reasons set forth below, the Motion is granted.

## II.    BACKGROUND

Defendant Sam's Club owns and operates "Store 6440," which is located in Latham, New York. Dkt. No. 29 at ¶ 12. Plaintiff is a female residing in Ballston Lake, New York who worked as an optician assistant in the Optical Center at Store 6440 from December 17, 2021 until May 5, 2023. *Id.* at ¶ 10; Dkt. No. 43 at ¶ 1.

During her tenure as an optician assistant at Store 6440, Plaintiff did not have a license to work as an optician in New York State. *See* Dkt. No. 43 at ¶ 6 ("New York State requires opticians to maintain a license."). Plaintiff completed part of the New York licensing requirements while working at Store 6440 but did not complete the full set of requirements until July 2023, approximately three months after her departure from Store 6440. *Id.* at ¶ 9. As an optician assistant, Plaintiff was primarily tasked with providing recommendations for glasses, billing insurance, and preparing equipment for the licensed optician. *Id.* at ¶ 2. Plaintiff also took eye measurements but only under the supervision of a licensed optician. *Id.* at ¶ 3.

Initially, Plaintiff worked at Store 6440 every weekday except for Wednesday, and every other weekend, for a total of thirty to forty hours per week. *Id.* at ¶ 4. Upon joining Store 6440, Plaintiff reported to Joseph Goodnough, the Optical Manager for Store 6440. *Id.* at ¶¶ 5, 24; *see also* Dkt. No. 1 at ¶ 16. When asked by Goodnough about her unavailability on Wednesdays, Plaintiff disclosed that she attended weekly counseling sessions at a shelter for victims of domestic violence. Dkt. No. 43 at ¶ 5. Separately, in January or February 2022, Plaintiff also informed Goodnough that she would need to miss a few days of work to undergo a medical procedure for

2

an ectopic pregnancy.  *See* Dkt. No. 41-3 at 25:06-24.[1]

According to Plaintiff, Goodnough repeatedly made sexually degrading comments to Plaintiff and other employees.  Dkt. No. 29 at ¶ 21.  Specifically, Plaintiff alleged that Goodnough would tell other male managers that Plaintiff wanted to have sexual relations with them, told Plaintiff that she "should take him into the back room so they could both have a better day," and spread rumors that Plaintiff had an "Only Fans" account.  *Id.* at ¶ 22.  Additionally, on one occasion, during which Goodnough and Plaintiff handed out lens wipes, Goodnough threw the wipes at Plaintiff on the floor as though Plaintiff were a stripper and yelled "get your money girl" as though the wipes were dollar bills.  *Id.* at ¶¶ 23-24.

On March 16, 2022, Plaintiff learned from Ian Doty, a front-end supervisor, that Goodnough was spreading a rumor that Plaintiff had an abortion and was in an abusive relationship.  *See* Dkt. No. 41-3 at 24:10-19; *see also* Dkt. No. 41-7 at 2.  That same day, Plaintiff confronted Goodnough about the rumor, but he denied being the source.  Dkt. No. 41-3 at 26:16-21; *see also* Dkt. No. 41-7 at 2.  Later that day, Plaintiff emailed Angela Maltes, the District Manager of Optical, to report Goodnough's conduct.  Dkt. No. 43 at ¶ 16; *see also* Dkt. No. 41-7 at 2.  Maltes then advised Plaintiff to notify Denise Wasiewicz-Bliznik, the Club Manager, which Plaintiff did the following morning.  *See* Dkt. No. 41-3 at 28:05-10.

Also on that same day, Plaintiff claims that she observed Goodnough researching women's shelters in the Saratoga area.  Specifically, Plaintiff alleges that, while Goodnough showed Plaintiff a Google search on his computer screen, his recent searches appeared, which included various women's shelters in Saratoga County.  Dkt. No. 41-3 at 13:24, 14:01-07; *see also* Dkt. No.

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

41-7 at 3. Plaintiff immediately reported this conduct to Wasiewicz-Bliznik and Mike Farese, the Produce Manager, who confirmed that the matter was under investigation and sent Plaintiff home for the day. Dkt. No. 43 at ¶¶ 17-18; *see also* Dkt. No. 41-7 at 3.

Upon returning to work the following day, Plaintiff noticed that Goodnough's computer was open to a Google search page listing domestic violence shelters. Dkt. No. 41-3 at 37:14-24, 38:01-08; *see also* Dkt. No. 41-7 at 4. Then on March 19, 2022, upon reviewing the phone call log in the office, Plaintiff discovered that Goodnough had placed calls to domestic violence shelters in her neighborhood, including Wellspring, a local shelter that she frequented. Dkt. No. 41-3 at 15:01-09; *see also* Dkt. No. 41-7 at 4-5. According to Plaintiff, Wellspring confirmed that Goodnough called the shelter and suggested kicking Plaintiff out of the program. Dkt. No. 41-3 at 15:14-24, 16:01-13; *see also* Dkt. No. 41-7 at 5.

Defendant maintains complaint procedures that allow employees to file complaints with Defendant's Global Ethics & Compliance Office ("Ethics"). Dkt. No. 43 at ¶ 12. On March 22, 2022, Plaintiff filed an Ethics complaint alleging that Goodnough was spreading a rumor that Plaintiff had an abortion and calling a domestic violence shelter that Plaintiff had frequented. *Id.* at ¶ 19.

Shortly thereafter, in early April 2022, Plaintiff took medical leave, initially due to work-related stress. *Id.* at ¶ 21; *see also* Dkt. No. 41-3 at 32:11-24, 33:01-13. On April 6, 2022, during Plaintiff's medical leave, Defendant terminated Goodnough after conducting an investigation into the allegations contained in Plaintiff's complaint. Dkt. No. 43 at ¶¶ 22-23; *see also* Dkt. No. 41-5 at 3; Dkt. No. 41-6 at 72.

While Plaintiff was on medical leave, Defendant hired Bridget Woodall-Farry to replace Goodnough as Optical Manager. Dkt. No. 43 at ¶ 24. During Plaintiff's first day working with

Woodall-Farry upon her return from medical leave, Plaintiff alleges that Woodall-Farry acknowledged hearing rumors that Plaintiff had been sleeping with Goodnough and previously had an abortion, and told Plaintiff that "if [she] ever [needed] another abortion, [to] just give [her] the baby." *See* Dkt. No. 41-3 at 40:12-42:23. Plaintiff further alleges that on Christmas Day in 2022, Woodall-Farry sent Plaintiff a GIF via text message depicting shirtless men in their underwear to wish Plaintiff a Merry Christmas. *Id.* at 47:01-04. Then, a little over three months later, on April 4, 2023, Woodall-Farry told Plaintiff during a meeting with two other managers not to "fuck" the incoming Club Manager. Dkt. No. 43 at ¶ 27.

Shortly thereafter, Plaintiff sent the following text message to Woodall-Farry on April 11, 2023:

> I may not be the greatest employee, I'm late, I take sick days. [B]ut is there something else? [D]id I do something to offend you? Because I've noticed that your behavior towards me has been quite negative, I don't like it and I'm not going to continue to tolerate it. [B]ecause honestly I'm hurt & have to wake up and push myself through anxiety to make it into work everyday. [F]or what? To have my second manager in a row at Sam's [C]lub making sexual comments trying to pass them off as jokes, but really they're just unprofessional and hurtful.

Dkt. No. 41-7 at 6. Plaintiff subsequently texted Wasiewicz-Bliznik and Jonathan Buckley, the District Manager, to request an investigation. *See* Dkt. No. 41-3 at 51:10-53:10.

Then, on April 13, 2023, Plaintiff filed a second Ethics complaint, which referenced Woodall-Farry's comment telling Plaintiff not to "fuck" the new Club Manager, and alleged a decrease in Plaintiff's work hours as well as Plaintiff's accumulation of attendance points for tardiness. Dkt. No. 43 at ¶¶ 25, 28; *see also* Dkt. No. 41-6 at 22-23.

Less than two weeks later, Plaintiff put in her two weeks' notice at Store 6440, prior to the completion of the Ethics investigation. Dkt. No. 43 at ¶ 32. Plaintiff's last day at Store 6440 was

May 5, 2023. *Id.* at ¶ 34. On May 9, 2023, Ethics completed its investigation, finding that Plaintiff's allegations were unsubstantiated. *Id.* at ¶ 30; *see also* Dkt. No. 41-6 at 17. Kim Reph, the lead investigator, explained that she was not able to corroborate the alleged statement made by Woodall-Farry on April 4, 2023, nor was she able to corroborate the alleged abortion comment made by Woodall-Farry prior to that time, based on her conversations with all participants. Dkt. No. 43 at ¶ 31; *see also* Dkt. No. 41-6 at 18. The investigation summary also noted that all schedule changes could be explained, as there were documented conversations with Plaintiff that her hours would be reduced due to her lack of licensing, which is required by New York State. Dkt. No. 43 at ¶ 31; *see also* Dkt. No. 41-6 at 18.

## III.    STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993). The court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Galeotti v. Cianbro Corp.*, No. 12-cv-00900, 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

A defendant, in seeking summary judgment, "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation

omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

## IV. DISCUSSION

Plaintiff asserts claims of hostile work environment and retaliation against Defendant, each under Title VII and the NYSHRL, respectively. Dkt. No. 29 at ¶¶ 64-83. The Court addresses each claim in turn.

### A. Hostile Work Environment

Defendant argues that Plaintiff's hostile work environment claims under Title VII and the NYSHRL must be dismissed because (i) Plaintiff was not subjected to severe or pervasive sexual harassment, (ii) the alleged incidents of harassment were not sex-based, and (iii) liability for any alleged harassment cannot be imputed to Defendant. Dkt. No. 41-1 at 11-18. Plaintiff disagrees. *See* Dkt. No. 42 at 12-15.

Hostile workplace claims brought under Title VII and the NYSHRL are assessed using the same standard. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 261-62 (2d Cir. 2023); *see also Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 50-51 (2d Cir. 2025). Under that standard, "a plaintiff must

first produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Knox*, 134 F.4th at 50-51 (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 68 (2d Cir. 2023)); *see also Phillips v. Fashion Inst. of Tech.*, No. 23-cv-375, 2024 WL 1005500, at *2 (2d Cir. Mar. 8, 2024).[2]  Furthermore, "a plaintiff must show 'a specific basis for imputing the conduct that created the hostile work environment to the employer.'"  *Williams*, 61 F.4th at 69 (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2d Cir. 2000)) (alterations omitted).[3]

### 1.  Sex-Based

"It is axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002)).  Indeed, in assessing Plaintiff's hostile work environment claim, "a trier of fact may only consider abusive conduct proven to be based on sex." *Braunstein v. Sahara Plaza, LLC*, No. 21-2030, 2022 WL 17480962, at *2 (2d Cir. Dec. 7, 2022)

---

[2] In 2019, the NYSHRL was amended to "be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300.  While "some courts in this Circuit 'have interpreted the amendment as rendering the standard for claims closer to the standard of the [New York City Human Rights Law],' . . . New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL[.]" *Cooper v. Franklin Templeton Invs.*, No. 22-cv-2763, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (summary order) (citation omitted).  For the reasons discussed below, the Court "need not resolve the impact of these amendments here," *see id.*, because the outcome remains the same under either standard.

[3] "[H]ostile work environment claims are not analyzed using the *McDonnell Douglas* three-part burden-shifting test." *McNulty v. Cnty. of Warren, New York*, No. 16-cv-843, 2019 WL 1080877, at *9 n.2 (N.D.N.Y. Mar. 7, 2019) (quoting *Matthews v. Corning Inc.*, 77 F. Supp. 3d 275, 292 (W.D.N.Y. 2014)).

(internal quotation marks and citations omitted).  "This may be proven by 'harassment in such sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace,' or by offering 'some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory.'"  *Fraser v. MTA Long Island Rail Rd.*, 295 F. Supp. 3d 230, 268 (E.D.N.Y. 2018) (quoting *Pucino v. Verizon Commc'ns, Inc.*, 618 F.3d 112, 117-18 (2d Cir. 2010)).

As an initial matter, certain of Goodnough's and Woodall's conduct is sex-based on its face.  Goodnough purportedly telling other male managers that Plaintiff wanted to have sex with them, suggesting that Plaintiff have sex with him by "tak[ing] him into the back room so they could both have a better day," spreading rumors that Plaintiff had an "Only Fans" account, and making gestures to Plaintiff as though she were a stripper constitute conduct that is inherently sex-based in character.  Likewise, it is reasonable to infer that Woodall-Farry telling Plaintiff not to "fuck" the incoming Club Manager and sending Plaintiff a GIF depicting shirtless men in their underwear constitutes conduct that occurred because of Plaintiff's sex.  *See Small v. Garland*, No. 18-cv-5659, 2021 WL 1226979, at *15 (S.D.N.Y. Mar. 31, 2021) (listing "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" as examples of actionable conduct) (quoting *Redd v. N.Y.S. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012)); *see also See Equal Emp. Opportunity Comm'n v. Draper Dev. LLC*, No. 15-cv-877, 2018 WL 3384427, at *7 (N.D.N.Y. July 11, 2018) (noting that "requests for sexual activity are not always made explicitly, and failure to directly demand sexual favors as a condition for employment does not negate indirect pressure" (quoting *Wagner v. Burnham*, No. 03-cv-1522, 2006 WL 266551, at *8 (N.D.N.Y. Feb. 1, 2006)).

With respect to the alleged abortion rumor spread by Goodnough and Woodall-Farry's

"offer" to take Plaintiff's baby should she "need another abortion," discrimination on the basis of pregnancy constitutes discrimination on the basis of sex under both Title VII and the NYSHRL. *See Haxhijaj-Sayegh v. City of Yonkers*, No. 24-cv-3622, 2026 WL 880644, at *3 (S.D.N.Y. Mar. 30, 2026); *Pullman v. Collins*, No. 24-cv-1383, 2025 WL 2673807, at *14 (S.D.N.Y. Sept. 18, 2025) (quoting *Ong v. Deloitte Consulting, LLP*, No. 21-cv-2644, 2025 WL 886947, at *10 (S.D.N.Y. Mar. 21, 2025)); *see also Equal Emp. Opportunity Comm'n v. Amazon.com Servs. LLC*, No. 24-mc-125, 2024 WL 3373514, at *2 (S.D.N.Y. July 11, 2024) (noting that Title VII was amended by the Pregnancy Discrimination Act, which provides that discrimination on the basis of sex includes "discrimination 'because of or on the basis of pregnancy, childbirth, or related medical conditions'") (quoting 42 U.S.C. § 2000e(k)).  Here, Plaintiff reported to Angela Maltes, the District Manager of Optical, that Goodnough was spreading a rumor that she had an abortion. *See* Dkt. No. 43 at ¶ 16.  Plaintiff speculates that Goodnough was spreading such a rumor because Plaintiff told Goodnough that she had an ectopic pregnancy and needed to take time off for a medical procedure.  Dkt. No. 41-3 at 24:21-24, 25:01-24.  Thus, Goodnough's rumor that Plaintiff had an abortion and Woodall-Farry's offer to take Plaintiff's baby "if [she] ever need[ed] another abortion" constitutes sex-based conduct.

Lastly, the Court considers whether Goodnough's conduct involving researching domestic violence shelters in the Saratoga area and contacting a shelter that Plaintiff had frequented to suggest that Plaintiff be dismissed from the program constitutes sex-based conduct.  Being a survivor of domestic violence is not a protected class under Title VII.  *See Taylor v. Children's Vill.*, No. 20-cv-10997, 2021 WL 1581568, at *4 (S.D.N.Y. Apr. 21, 2021) (citing 42 U.S.C. § 2000e-2(a)).  And while the NYSHRL does prohibit discrimination based on an employee's status as a victim of domestic violence, *see Valdez v. Wells Fargo Advisors, LLC*, No. 23-cv-7279, 2026

WL 821431, at \*7 (S.D.N.Y. Mar. 25, 2026) (quoting N.Y. Exec. Law § 296(1)), Plaintiff does

not raise a claim of domestic violence-based discrimination under NYSHRL.  However, Plaintiff

"may rely on incidents of sex-based abuse to show that other ostensibly sex-neutral conduct was,

in fact, sex-based." *Carroll v. New York*, No. 14-cv-479, 2018 WL 1033285, at \*5 (N.D.N.Y. Feb.

22, 2018) (quoting *Pucino*, 618 F.3d at 118); *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537,

547-48 (2d Cir. 2010) ("Circumstantial evidence that facially sex-neutral incidents were part of a

pattern of discrimination on the basis of gender may consist of evidence that the same individual

engaged in multiple acts of harassment, some overtly sexual and some not."  (internal quotation

marks and citation omitted)).  Here, given that Goodnough previously spread a rumor that Plaintiff

had an abortion, and Goodnough began researching domestic violence shelters only one day after

Plaintiff had confronted Goodnough about the rumor, *see* Dkt. No. 41-3 at 37:14-24, 38:01-08,

and drawing all inferences in Plaintiff's favor, a reasonable juror could infer that Goodnough's

research and placement of calls to domestic violence shelters was sex-based conduct.  *See, e.g.*,

*Howley v. Town of Stratford*, 217 F.3d 141, 156 (2d Cir. 2000) (holding that a factfinder was

entitled to infer that facially neutral abuse was sex-based because perpetrator had previously made

several sexually derogatory statements).

### 2.  Severe or Pervasive

To determine whether conduct is severe or pervasive, courts evaluate the totality of the

circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance."  *Banks*, 81 F.4th at 262 (quoting *Harris v.*

*Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  "Under federal and state law, 'to withstand summary

judgment, a plaintiff must demonstrate either that a single incident was extraordinarily severe, or

that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.'" *Knox*, 134 F4th at 51 (quoting *Whidbee*, 223 F.3d at 69). "This assessment has both an objective and subjective component: 'the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.'" *Banks*, 81 F.4th at 262 (quoting *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 387 (2d Cir. 2020)). Further, "incidents that are few in number and that occur over a short period of time may fail to demonstrate a hostile work environment." *Murphy v. AutoZone, LLC*, No. 22-cv-911, 2024 WL 3401199, at *6 (E.D.N.Y. July 12, 2024) (quoting *Whidbee*, 223 F.3d at 69). Indeed, "the challenged incidents must be more than episodic; they must be sufficiently continuous and concerted" in order to be deemed pervasive. *Banks*, 81 F.4th at 264 (internal quotation marks and citation omitted).

Defendant argues that Goodnough's and Woodall-Farry's conduct, while unprofessional, was not sufficiently pervasive or severe to alter the terms or conditions of Plaintiff's employment. Dkt. No. 41-1 at 11-13. The Court disagrees.

Here, even assuming that Plaintiff subjectively perceived her work environment to be hostile, the majority of Goodnough's and Woodall-Farry's conduct, while certainly offensive and unprofessional, is insufficient, standing alone, to permit a reasonable factfinder to conclude that Plaintiff's working environment became objectively hostile. *See, e.g.*, *Redd*, 678 F.3d at 177. However, certain of the conduct at issue meets the requisite standard. In particular, a reasonable juror could conclude that contacting a domestic violence shelter that Plaintiff had frequented and suggesting that Plaintiff be dismissed from the program is objectively severe. Notwithstanding that such conduct only occurred once, contacting an employee's domestic violence shelter could be viewed as objectively intimidating, threatening, and likely to cause the employee psychological

12

harm. *See id.* at 176 (noting that even a single episode of harassment, if severe enough, can establish a hostile work environment). A reasonable person could perceive Goodnough's actions as an intrusion into Plaintiff's personal safety and privacy. Thus, Goodnough's conduct objectively constitutes an "intolerable alteration" of Plaintiff's working conditions that substantially interfered with and impaired her ability to do her job. *See Mathirampuzha v. Potter*, 548 F.3d 70, 79 (2d Cir. 2008).

Accordingly, drawing all reasonable inferences in Plaintiff's favor, a reasonable juror could conclude that Goodnough's conduct was sufficiently severe to create a hostile work environment.

### 3. Imputing Conduct to Defendant

#### i. Title VII

However, in order to hold Defendant liable for a hostile work environment under Title VII, Plaintiff must show a basis for imputing the conduct creating the hostile work environment to Defendant. "When, as here, the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (citations omitted). "But even where conduct is automatically imputed to the employer, 'the defending employer may be permitted, subject to proof by a preponderance of the evidence, to raise the *Faragher/Ellerth* affirmative defense to liability or damages.'" *Hornig v. Trs. of Columbia Univ. in City of New York*, No. 17-cv-3602, 2022 WL 976267, at *14 (S.D.N.Y. Mar. 31, 2022) (quoting *Gorzynski*, 596 F.3d at 103).

An employer establishes an affirmative defense to a hostile work environment claim where it shows that "(1) the employer exercised reasonable care to prevent and correct promptly any discriminatory harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm

otherwise." *Ferrara v. Sterling, Inc.*, No. 23-cv-454, 2024 WL 485742, at *1 (2d Cir. Feb. 8, 2024) (*Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir. 2006)). "The sufficiency of an employer's remedial actions is evaluated under the totality of the circumstances." *Saleh v. Pretty Girl, Inc.*, No. 09-cv-1769, 2022 WL 4078150, at *21 (E.D.N.Y. Sept. 6, 2022) (citation omitted); *see also Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014). "In the context of summary judgment, if the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." *Drouillard v. Sprint/United Mgmt. Co.*, 375 F. Supp. 3d 245, 267 (E.D.N.Y. 2019) (internal quotation marks and citation omitted); *see also Petrie v. Off. of Mental Health Cent. New York Psychiatric Ctr.*, No. 22-cv-123, 2026 WL 161198, at *8 (N.D.N.Y. Jan. 21, 2026).

As to the first element, the parties do not dispute that, at all times during Plaintiff's term of employment, Defendant maintained policies prohibiting discriminatory harassment on the basis of sex. *See* Dkt. No. 43 at ¶ 10. Specifically, Defendant's Global Discrimination & Harassment Prevention Policy, which Goodnough and Woodall-Farry each signed, prohibits any form of harassment based on an individual's protected status. *Id.* at ¶¶ 10, 14-15; *see also* Dkt. Nos. 43-6, 43-7, 43-8. Additionally, Defendant's New York State Sexual Harassment Prevention Policy encourages individuals to report sexually harassing conduct to a salaried member of management or to Ethics. Dkt. No. 43 at ¶ 13; *see also* Dkt. No. 41-6 at 61-64. Moreover, it is undisputed that Defendant maintains procedures that enable employees to file complaints with Defendant's Global Ethics & Compliance Office, including confidential and anonymous complaints. Dkt. No. 43 at ¶ 12. "Although not necessarily dispositive, the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense." *Szwalla v. Time Warner Cable, LLC*, 135 F. Supp. 3d 34,

14

44 (N.D.N.Y. 2015), *aff'd*, 670 F. App'x 738 (2d Cir. 2016). In accordance with Defendant's policies, after Plaintiff filed an initial Ethics complaint on March 22, 2022 regarding Goodnough's conduct, Defendant promptly conducted an investigation and terminated Goodnough less than one month later on April 6, 2022. Dkt. No. 43 at ¶¶ 19, 23; Dkt. No. 41-6 at 25. While Plaintiff contends that Goodnough was terminated for theft of merchandise, *see* Dkt. No. 43 at ¶ 23, the record evidence upon which Plaintiff relies does not support Plaintiff's contention; rather, the evidence indicates that Goodnough was terminated in response to the outcome of the Ethics investigation. *See* Dkt. No. 43-5 at 6. In fact, none of the evidence in the record supports Plaintiff's assertion. *See* Dkt. No. 41-6 at 72 (noting that Goodnough was terminated on April 6, 2022 "based on [an] investigation involving Ethics, Compliance, & HR"). And with respect to the alleged conduct and statements made by Woodall-Farry, Plaintiff filed an Ethics complaint on April 13, 2023, and Defendant promptly conducted an investigation, which concluded on May 9, 2023. Dkt. No. 43 at ¶¶ 25, 30. Based upon these uncontroverted facts, the Court finds that there is no evidence from which a reasonable juror could conclude that Defendant failed to satisfy the first element of the affirmative defense.

Regarding the second element, "proof that an employee has unreasonably failed to use the employer's complaint procedure normally suffices to satisfy the employer's burden." *Fay v. City of Newburgh*, No. 21-cv-3140, 2024 WL 4169552, at *4 (S.D.N.Y. Sept. 12, 2024) (quoting *Ferraro*, 440 F.3d at 102). Here, Defendant has shown that Plaintiff unreasonably failed to avail herself of Defendant's internal complaint procedures because she voluntarily resigned prior to the completion of the investigation into Woodall-Farry. *See, e.g.*, *O'Dell v. Trans World Ent. Corp.*, 153 F. Supp. 2d 378, 391 (S.D.N.Y. 2001) (finding that plaintiff unreasonably failed to take advantage of employer's remedial procedures, in part, because plaintiff refused to participate in

15

employer's internal investigation), *aff'd*, 40 F. App'x 628 (2d Cir. 2002). And Plaintiff has not presented any evidence or testimony from which a reasonable juror could conclude that her failure to avail herself of Defendant's investigatory procedure was reasonable. Moreover, once Ethics completed its investigation, Plaintiff's allegations were found to have been unsubstantiated. Dkt. No. 43 at ¶ 30; *see also Miller v. New York State Police*, No. 20-3976, 2022 WL 1133010, at *3 (2d Cir. Apr. 18, 2022) (finding the second prong of the affirmative defense satisfied where an effective investigation of plaintiff's complaint found no retaliation after plaintiff ultimately availed himself of his employer's internal complaint procedure).

Thus, Defendant has established the *Faragher/Ellerth* affirmative defense to a hostile work environment claim under Title VII.

### ii. The NYSHRL

Likewise, there is also no basis to impute Goodnough's or Woodall-Farry's conduct to Defendant under the NYSHRL. Under the NYSHRL, "an employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it." *Menos v. Uncle Nearest, Inc.*, No. 22-cv-1449, 2025 WL 917347, at *12 (E.D.N.Y. Mar. 25, 2025) (internal quotation marks and citations omitted); *see also Upper Echelon Ent. LLC v. New York*, No. 22-cv-659, 2023 WL 3722012, at *6 (N.D.N.Y. May 30, 2023). "[C]ourts have found that an employer condones harassment (and thus becomes a party to it) only where the employer either takes no action in response to accusations or where any action taken is alleged to have been in bad faith." *Payne v. JetBlue Airways Corp.*, No. 20-cv-101, 2024 WL 3360381, at *12 (E.D.N.Y. July 9, 2024) (citation omitted). Indeed, "a good-faith response to address misconduct precludes a conclusion that an employer has condoned misbehavior even if reasonable people could find that response insufficient." *M.H. v. Starbucks Coffee Co.*, No. 22-

16

cv-10507, 2023 WL 5211023, at *5 (S.D.N.Y. Aug. 13, 2023).

Here, there is no dispute that Defendant took swift action in response to both of Plaintiff's Ethics complaints. As noted above, *see supra* Section IV(A)(3)(i), less than one month after Plaintiff filed her Ethics complaint regarding Goodnough, Defendant conducted an investigation into Goodnough's alleged conduct and ultimately terminated him in response to the outcome of the investigation. *See* Dkt. No. 43 at ¶ 19; Dkt. No. 41-6 at 25, 72; Dkt. No. 43-5 at 6. Defendant also promptly investigated Woodall-Farry's alleged conduct in response to Plaintiff's second Ethics complaint. *See* Dkt. No. 43 at ¶ 25; *see also* Dkt. No. 43-4 at 7. Notwithstanding Plaintiff's voluntary resignation during the pendency of the Ethics investigation into Woodall-Farry, *see* Dkt. No. 43 at ¶¶ 32, 34, Defendant completed the investigation shortly after Plaintiff's departure. *Id.* at ¶ 30. While the investigation found insufficient evidence to conclude that Woodall-Farry engaged in conduct contrary to the Code of Conduct and further found that Plaintiff's allegations related to Woodall-Farry's conduct were unsubstantiated, *see* Dkt. No. 41-6 at 17, Plaintiff does not identify any evidence indicating that the investigation into Woodall-Farry was conducted in bad faith. Plaintiff, Woodall-Farry, and witnesses with knowledge of the alleged incidents were interviewed in connection with the investigation, *see* Dkt. No. 41-6 at 21 (noting that Plaintiff, Woodall-Farry, Robert Foley, and Matthew Orfe were each interviewed in connection with the investigation), and based on those interviews, Woodall-Farry's alleged statements were not able to be corroborated. *See* Dkt. No. 41-6 at 18. Furthermore, the investigation found that all of Plaintiff's schedule changes had a legitimate explanation, as there existed documentation of conversations with Plaintiff indicating that her hours would be reduced due to her lack of license. *Id.* Accordingly, a reasonable juror could not find that Defendant encouraged, condoned, or approved of Goodnough's or Woodall-Farry's conduct. *Compare Prophete-Camille v. Stericycle,*

17

*Inc.*, No. 14-cv-7268, 2017 WL 570769, at *10 (E.D.N.Y. Feb. 13, 2017) (finding that employer's "total inaction in response to [p]laintiff's alleged complaints constitutes condonation such as to impute liability to [d]efendant for [harasser's] conduct") *with Payne*, 2024 WL 3360381, at *13 (finding that a reasonable jury could not conclude that employer condoned harasser's conduct where employer "interviewed all witnesses with knowledge of the incident, took notes on each witness interview, took steps to collect evidence . . ., and took some disciplinary action against [the harasser]").

*   *   *

For these reasons, the Court finds that Plaintiff's hostile work environment claims under Title VII and the NYSHRL fail as a matter of law.  Accordingly, the Court grants summary judgment with respect to those claims.[4]

## B.    Retaliation

Title VII and the NYSHRL also prohibit employers from retaliating against an employee because she has opposed an unlawful discrimination practice.  *Zheng-Smith v. Nassau Health Care Corp.*, No. 20-cv-3544, 2021 WL 4097316, at *3 (2d Cir. Sept. 9, 2021) (citing 42 U.S.C. § 2000e–3(a); N.Y. Exec. L. § 296(7)).  "Retaliation claims under Title VII and the NYSHRL, like

---

[4] To the extent that Plaintiff raises a claim for constructive discharge, such a claim also fails. "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, *intentionally* creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chislett v. New York City Dep't of Educ.*, 157 F.4th 172, 193 (2d Cir. 2025) (quoting *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011)) (emphasis in original). "Constructive discharge claims are difficult to establish, and are routinely rejected by the courts." *White v. Orange Urgent Care, PLLC*, No. 24-cv-6827, 2026 WL 867141, at *9 (S.D.N.Y. Mar. 30, 2026) (internal quotation marks and citations omitted).  "At bottom, the standard for establishing a constructive discharge 'is higher than the standard for establishing a hostile work environment.'" *Chislett*, 157 F.4th at 193 (quoting *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010)).  Consequently, without an actionable hostile work environment claim, any claim of constructive discharge must also fail. *Marciano v. NBCUniversal Media LLC*, No. 23-cv-8127, 2024 WL 4063743, at *6 (S.D.N.Y. Sept. 5, 2024).

18

discrimination claims, are analyzed under the *McDonnell Douglas* burden-shifting framework."
*Id.* (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013)). "To make out a *prima facie*
case of retaliation, a plaintiff must make four showings: that (1) she engaged in a protected activity;
(2) her employer was aware of this activity; (3) the employer took adverse employment action
against her; and (4) a causal connection exists between the alleged adverse action and the protected
activity." *Ferrando-Dehtiar v. Anesthesia Grp. of Albany, P.C.*, 727 F. Supp. 3d 165, 190
(N.D.N.Y. 2024) (quoting *Summa*, 708 F.3d at 125). "If the plaintiff establishes a *prima facie*
case, the burden shifts to the employer to demonstrate that a legitimate, non-retaliatory reason
existed for its action." *Cusher v. Mallick*, No. 16-cv-1273, 2020 WL 109510, at *20 (N.D.N.Y.
Jan. 9, 2020) (citing *Summa*, 708 F.3d at 129). "If the employer demonstrates a legitimate, non-
retaliatory reason for the adverse employment action, the burden shifts back to the plaintiff to show
'that the desire to retaliate was the but-for cause of the challenged employment action.'" *Hellwig
v. Cnty. of Saratoga*, No. 22-cv-488, 2024 WL 3791238, at *8 (N.D.N.Y. Aug. 13, 2024) (quoting
*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)).

Plaintiff alleges that her work hours were reduced in retaliation for confronting Woodall-
Farry about a discriminatory comment she made to Plaintiff on April 4, 2023. Dkt. No. 29 at ¶ 47.
Specifically, Plaintiff alleges that Woodall-Farry "told [Plaintiff] not to 'fuck' the new manager
who was coming to the store," and after telling Woodall-Farry that the comment was offensive,
Woodall-Farry reduced her hours and told Plaintiff "to decide if this was the place [Plaintiff]
wanted to be." Dkt. No. 43-3 at ¶¶ 33, 35-36. Shortly thereafter, on April 13, 2023, Plaintiff filed
an Ethics complaint against Woodall-Farry. *See* Dkt. No. 43 at ¶ 25. Defendant contends that
Plaintiff's complaints were too vague to put Defendant on notice that Plaintiff was opposing

19

conduct prohibited by Title VII, and in any event, Plaintiff did not experience an adverse employment action.  Dkt. No. 41-1 at 18-19.

### 1.    Protected Activity

"Protected activity is a formal or informal complaint about employment practices or conditions that is motivated by a good faith, reasonable belief that the underlying employment practice was unlawful, even if the practices or conditions were not actually unlawful."  *Krul v. DeJoy*, 705 F. Supp. 3d 5, 60 (N.D.N.Y. 2023) (quoting *Ringel v. N.Y. City Dep't of Educ.*, 616 F. Supp. 3d 205, 233 (E.D.N.Y. 2022)).  However, "the employee's complaint 'cannot be so vague or generalized that the employer could not reasonably have understood that the plaintiff's complaint was directed at conduct prohibited by Title VII.'"  *Id.* (quoting *Bowens-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 222 (E.D.N.Y. 2014)).  Here, Plaintiff complains of "sexual harassment" and "discrimination based on . . . sex," noting that "Woodall-Farry made a discriminatory sexual comment to [her]," and her complaint details the interaction that took place. *See* Dkt. No. 41-6 at 22-23.  Thus, on its face, Plaintiff's complaint to Ethics is sufficiently clear to put Defendant on notice that Plaintiff believed that she was experiencing sex discrimination. *See, e.g.*, *Nally v. New York*, No. 10-cv-1186, 2013 WL 2384252, at *26 (N.D.N.Y. May 30, 2013) (finding that plaintiff's complaints to her supervisor via email "were sufficiently specific to put defendants on notice that plaintiff believed she was being discriminated against on the basis of gender"); *Casalino v. New York State Cath. Health Plan, Inc.*, No. 09-cv-2583, 2012 WL 1079943, at *12 (S.D.N.Y. Mar. 30, 2012) (holding that "[p]laintiff's language . . . was more than sufficient to alert Human Resources and the Chief Compliance Officer that [p]laintiff was making a complaint sounding in gender discrimination").

### 2. Causal Connection Between Protected Activity and Adverse Employment Action

But despite Plaintiff's engagement in a protected activity, Plaintiff fails to establish that Defendant subjected her to adverse employment action in response to her complaints. "[A]n adverse employment action is a materially adverse change in the terms and conditions of employment." *Burns v. City of Utica*, 2 F. Supp. 3d 283, 292 (N.D.N.Y. 2014) (internal quotation marks and citation omitted), *aff'd*, 590 F. App'x 44 (2d Cir. 2014). However, "[a]ny actions before [the occurrence of the protected activities] cannot be considered adverse employment actions as a matter of law." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 103 (S.D.N.Y. 2023) (citation omitted)). Indeed, "it is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity." *Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 446 (W.D.N.Y. 2021) (citing *Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013), *aff'd*, 641 F. App'x 60 (2d Cir. 2016) (summary order)); *see also Young v. Westchester Cnty. Dep't of Soc. Servs.*, 57 F. App'x 492, 495 (2d Cir. 2003) ("[W]here the adverse action was already ongoing at the time of the protected activity, or is very similar to another adverse action that was taken before the protected activity, with no other change in relevant circumstances, logic precludes any inference of causation.").

Here, Plaintiff states in her Ethics complaint dated April 13, 2023 that she experienced a "[l]oss of hours immediately following [her] initial complaint" to Woodall-Farry. Dkt. No. 41-6 at 22. However, record evidence indicates that Plaintiff experienced a reduction in hours in February 2023, approximately two months prior to her complaint regarding Woodall-Farry. *See* Dkt. No. 41-6 at 53. The record also indicates that Plaintiff worked more hours in the weeks following her Ethics complaint than she did in the weeks prior to her complaint. *See* Dkt. No. 41-

6 at 10-14. Plaintiff's bare allegation that she experienced a reduction in hours, unsupported and in fact contradicted by the record evidence, is insufficient to create a genuine dispute of material fact. *See Shannon v. N.Y.C. Transit Auth.*, 332 F. 3d 95, 99 (2d Cir. 2003) ("Conclusory allegations, conjecture, and speculation are insufficient to create a genuine dispute of material fact.").

Thus, a reasonable juror could not find that Plaintiff's hours were reduced as a result of complaining about Woodall-Farry's comment. *See, e.g.*, *Hamilton v. Siemens Healthcare Diagnostics, Inc.*, No. 23-cv-7408, 2026 WL 880547, at *12 (S.D.N.Y. Mar. 31, 2026) (granting summary judgment on retaliation claims where each adverse employment action took place before plaintiff's protected activities); *Baker v. Bridge Inc.*, 805 F. Supp. 3d 521, 550 (S.D.N.Y. 2025) (finding that "[p]laintiff fail[ed] to make out a *prima facie* case of retaliation because any alleged retaliatory action predated her alleged protected activity").

### 3. Legitimate, Non-Discriminatory Reason

Finally, even if Plaintiff could establish a *prima facie* case of retaliation, Defendant has articulated a legitimate, non-discriminatory reason for reducing Plaintiff's hours—her failure to obtain the appropriate state licensing. *See* Dkt. No. 41-6 at 53 (noting that Plaintiff is "on limited duty" as of February 4, 2023 and that "[Plaintiff's] hours will be limited until she can either furnish [the appropriate state] permit or move[] to another department"); *see also* Dkt. No. 41-6 at 18 (Ethics investigation report finding that "there was document[ed] conversation with [Plaintiff] that her hours would be reduced due to her not producing her license permit which is a requirement in NY State"); Dkt. No. 41-4 at 6:12-25, 7:01-08 (Woodall-Farry testifying that she was advised by Kim Reph to reduce Plaintiff's hours because "[i]t came to light that [Plaintiff] never actually followed through with the application process for her apprenticeship"). Plaintiff has failed to

produce or identify any evidence that Defendant's proffered reason for reducing Plaintiff's hours was pretextual.

Accordingly, the Court grants Defendant's Motion as to Plaintiff's retaliation claims under Title VII and the NYSHRL.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's motion for summary judgment, Dkt. No. 41, is **GRANTED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 11, 2026
      Albany, New York

Anne M. Nardacci
U.S. District Judge